**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DAMIEN J. MORGAN, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | Case No. _____ |
| | **)** | |
| MEMPHIS LIGHT, GAS & WATER, | **)** | **JURY DEMANDED** |
| | **)** | |
| | **)** | |
| Defendant. | **)** | |
| | **)** | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEFF

COMES NOW, Plaintiff, Damien Morgan ("Plaintiff"), by and through undersigned counsel, and respectfully submits to the Court the following Complaint for Damages and Injunctive Relief against his former employer, the Defendant, Memphis Light, Gas & Water ("MLGW"), for discrimination, harassment based upon his race and retaliation for filing internal complaints.

## INTRODUCTION

1.      Plaintiff, former Facilities Locator with MLGW, hereby brings this Complaint for Damages and injunctive relief against his former employer, Defendant MLGW, for discrimination, harassment and retaliation (including retaliatory harassment) because of his race and in retaliation for him filing complaints against his supervisor(s) for the same behavior.

2.      The acts and/or omissions by Defendant of discrimination, harassment (including hostile work environment) and retaliation (and retaliatory harassment) are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* (race/retaliation) and in violation of 42 USC

1981; and the acts and/or omissions constitute Discrimination and/or Retaliation under the Tennessee Human Rights Act, TCA 4-21-101, *et seq*., including but not limited to discriminatory practices violations under 4-21-301, *et seq*. and Employment-Related Discrimination under TCA 4-21-401, *et seq*. (for which civil action is allowed under TCA 4-21-311, *et seq*.), and are in violation of state law claims of wrongful termination, negligent inflictions of emotional distress (under the GTLA), all of which are in violation of Tennessee state law, and all of which are enforceable in this Court pursuant to the Court's Jurisdiction and/or Supplemental Jurisdiction authority. Defendant's actions also violate Plaintiff's constitutional rights to due process actionable through 42 USC 1983.

## JURISDICTION

3.      The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that this case involves a civil action arising under the Constitution and laws of the United States; 28 U.S.C.§1343(a)(3) and (4) in that this is a civil action to secure equitable or other relief and to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; in that this case pursuant to 42 U.S.C. § 2000(e)-5(f)(3) is a civil action brought under Title VII of the Civil Rights Act of 1964; in that this case is pursuant to 42 U.S.C § 1983 as this is an action for violation of constitutional rights; and in that this case is pursuant to 42 U.S.C § 1981 for violations of Plaintiff's rights protected by this federal statute.

4.      At all times relevant, the Defendant is an employer within the meaning of Title VII, 42 USC 2000e, *et seq.*, and the Tennessee Human Rights Act, TCA § 4-21-401, *et seq*.

5.     Plaintiff received his Notice of Suit Rights from the EEOC regarding his EEOC Charge No. 490-2023-02786 alleging race discrimination and retaliation on August 24, 2023. **(Attached as Exhibit 1).** This lawsuit is timely filed within 90 days of receipt.

## VENUE

6.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2) as Defendant is subject to the jurisdiction of this Court and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

7.     Plaintiff is an adult male citizen of the United States, of African American decent, who resides and has resided at all times pertinent to the events referred to herein in Shelby County, Tennessee.

8.     Defendant, Memphis Light, Gas, & Water ("Defendant MLGW"), is a municipal utility service owned by the City of Memphis located in Shelby County, Tennessee. Service can be accomplished by delivering a copy of the Summons and Complaint to the Chief Executive Officer thereof, or to the Vice President and General Counsel: Jennifer Sink, 220 S Main St, Memphis, TN 38103-3917.

## FACTS

9.     Plaintiff, an African American male, was hired by MLGW in May of 2008 as a Meter Reader and was later promoted to Facilities Locator.

10.     Plaintiff has received satisfactory performance reviews while at MLGW.

11.     Plaintiff had a prior 9-day suspension, set out factually below, which had five (5) year Condition of Continued Employment Agreement from 2019 (which Plaintiff asserts below was illegal and invalid).

12.     Plaintiff had an Oral Reprimand from August 2022, for violating locating procedures and a written reprimand for punctuality on November 29, 2022.

13.     At the end of September 2022, Plaintiff met with Stacey Blakney (Supervisor, White Male), Michael Matthews (General Foreman, White Male), and Martin Jarrett (Foreman, Black Male) to discuss his desire to go through the foreman development program.

14.     Plaintiff wanted to advance at MLGW but was prevented from advancing to foreman due to his race.

15.     Plaintiff was told that he had all of the qualifications to be admitted into the program but was nonetheless not chosen.

16.     Mr. Blakney and Mr. Matthews did choose to admit a white employee, Jason O'Campo, an employee with less job seniority, professional experience, and with significant on job accidents.

17.     This specific white employee who received admission to the developmental program is a close friend of Mr. Blakney and Mr. Matthews, and they spend time together outside of the workplace.  Plaintiff has personally witnessed Blakney and Matthews having lunch and has overheard Blakney and Matthews and/or O'Campo speaking about going to bars together, or being at Matthews house together for social gatherings.

18.     In mid-October, 2022, Plaintiff was called into the office and asked about a work ticket which had been issued that morning and designated for "road crew."

19.     Mr. Jarrett took the call on speaker phone but could not answer Plaintiff's specific questions and gave no specific instruction to Plaintiff with regard to the work ticket at issue. Mr. Jarrett stated that he would call Mr. Matthews and ended the phone call.

20.     After not hearing back from Mr. Jarrett, Plaintiff once again placed a telephone call to the office which was answered by M. Greg Rosser (African American Male).

21.     This call was on speaker phone and Plaintiff could hear Mr. Jarrett claim that he instructed Plaintiff to go take care of the work ticket and that Plaintiff had refused. This was not true or accurate.

22.     Plaintiff then heard Mr. Matthews yell "Tell that Mother F* I said go do the job!" After hearing this exchange, Plaintiff immediately made it known that Mr. Jarrett's claim was incorrect, and that plaintiff had never been instructed to fulfill the work ticket and had not refused to perform his job.

23.     Plaintiff has not heard Mr. Matthews yell and speak in the same derogatory way, and use profanity towards or about white employees.

24.     Realizing and reasonably fearing that Mr. Jarrett and Mr. Matthews were apparently setting him up for an insubordination charge, Plaintiff asked to meet with Mr. Blakney.

25.     Plaintiff met with Mr. Blakney, Mr. Jarrett and Mr. Grosser via telephone the same day or the next.

26.     Plaintiff explained to Mr. Blakney the questions that he had raised about the work ticket to Mr. Jarrett during the initial phone call.

27.     Mr. Jarrett became increasingly hostile towards Plaintiff and eventually slammed the telephone, disconnecting the call. Plaintiff had not observed Mr. Jarret acting hostile or slamming phones when addressing white employees.

28.     On or about December 8, 2022, Mr. Morgan reported his Supervisor, Stacey Blakney (white male), the General Foreman, Mike Matthews (white male), and the Foreman, Martin Jarrett (black male – carrying out the instruction of Matthews) to Defendant MLGW's EEO staff member

Virginia Leonard (white female). Plaintiff claimed harassment due to race against the three men asserting failure to promote, failure to train and discrimination impacting Plaintiff's terms and conditions of employment.

29.     Plaintiff also challenged his COEA and/or complained about it and it being used improperly/illegally (last chance letter).

30.     After Plaintiff filed the complaint, the harassment and retaliation increased.

31.     During this time, end of 2022, Mr. Matthews screamed at four employees, including Plaintiff and two African American women and another African American man. Mr. Matthews screamed, "get out of here." The employees complained to the Union Steward and there was a meeting the same day at which Mr. Matthews said he was having "a bad day."

32.     On December 18, 2022, Plaintiff was out working a job, when Mr. Blakney ordered his work truck searched on the side of the road by one of Plaintiff's peers, Mr. Freddie Hawkins. There is no procedure or requirement for such a search as it has never been done before for any other employees. The search had no purpose other than to harass, intimidate, and embarrass Plaintiff due to the internal EEO filed by Plaintiff.

33.     This unjustified truck search was close in time (ten days) from Plaintiff's EEO complaint.

34.     Prior to Plaintiff filing his complaint against members of his management team, the assignment of new trucks and other new equipment was done based upon seniority (length of employment) with Defendant MLGW.

35.     Plaintiff was in line to receive the next new truck as the one he had been assigned was old and beat up.

36.     After Plaintiff filed his internal EEO, Mr. Matthews denied Plaintiff a new truck and said he was going to change the assignment system.

37.     Mr. Jason Ocampo (white male) and Michael Pacheo (non-AA, male) who had been with Defendant MLGW seven years less than Plaintiff had already received trucks without issue.

38.     Plaintiff was not given the next new truck, which he was entitled to, based upon the long-established seniority system.  Plaintiff was able to eventually obtain a truck when Ava Harvey left to another job.

39.     Mr. Ocampo is a close friend with Mr. Blakney and Mr. Matthews, and they socialize outside of the work environment.

40.     On June 20, 2023, Mr. Matthews and Mr. Blakney completed Plaintiff's annual performance review. Plaintiff's overall level of performance was a "3 – Effective."

41.     Plaintiff's performance review included the following comment: "Damien does his part in keeping a safe working environment and wears his PPE. Has an acceptable working knowledge on rules and standards. Damien works an acceptable amount of overtime and performs tasks with some oversight. Willing to help others when asked."

42.     Plaintiff's performance review however stated that Plaintiff was not doing his tickets sufficiently.

43.     Plaintiff was concerned that he was not given credit for having helped other employees in their areas of work.

44.     On June 29, 2023, Plaintiff decided to go into the office and ask management a few questions about the comment in the review regarding tickets. Plaintiff's reason for going into the office was to get copies of his performance appraisals, so that he could prove whether he was getting proper credit for his tickets (management asserted that Plaintiff needed to improve ticket count to 15 per day).

45.     Mr. Mike Matthews, was inside one of the offices; so, Plaintiff knocked on the door and asked Mr. Matthews if MLGW kept records about Plaintiff's other job assignments, or when he helped with different jobs, including road jobs.

46.     Plaintiff asked where he could get copies of his yearly reviews. Mr. Matthews stated that they could be obtained from his supervisor – Stacey Blakney.

47.     Plaintiff then asked if management kept a record of every time an employee is sent to another area to help a fellow employee on their road job. Mr. Matthew stated that they did not. Plaintiff then asked if there is a record of the tickets that are assigned each morning where an employee is sent to an area outside of their assigned areas; and Mr. Matthews did not directly answer this question and stated rather jokingly that he would not answer any more questions without a witness.

48.     Plaintiff stated that they could get Devin Thompson, the Union Steward, to come in.

49.     Mr. Matthews refused and told Plaintiff to get out of his office.

50.     Standard procedure is for Management to get a Union Steward to be present when a management official wants someone else present.

51.     As Plaintiff gathered his things to exit the office, Mr. Matthews forcefully pushed him.  No warning, no arguing, just a push from Mr. Mathews.

52.     Plaintiff stated to Mr. Matthews, "Mike why did you push me? Why did you put your hands on me? You are not supposed to touch me Mike!"

53.     Mr. Matthews then stepped towards Plaintiff and stated that he could touch him if he so chose. Mr. Matthews then grabbed Plaintiff's elbow and gripped it firmly.

54.     Plaintiff again stated "Don't touch me bruh! Don't put your hands on me again Mike."

55.     Mr. Matthews then got closer to Plaintiff and pushed his finger into Plaintiff's face next to his nose under his glasses. The action was forceful enough to make Plaintiff's head tilt back.

56.     At this point Plaintiff was alarmed that he needed to defend himself. Plaintiff took his hat and glasses off, and told Mr. Matthews "if you want to hit me, go ahead and hit me!"

57.     Co-workers became involved, seeing what was happening, and helped Plaintiff and Mr. Matthews separate.

58.     As he was leaving the office, Plaintiff's supervisor, Stacey Blakney exited his office and shouted at Plaintiff that he "was done." Mr. Blakney never asked Plaintiff what had happened, why he was upset, or what had been said.

59.     Following the incident, Plaintiff walked to the nearest guard station and asked for help.

60.     Major Cunningham listened to Plaintiff's story and then the two of them returned to the office, where they found both Mr. Matthews and Mr. Blakney conferring with each other and writing down statements.

61.     Mr. Blakney, Mr. Matthews, and officer Cunningham all went into a private office, closed the door, barred Plaintiff from entry, and told him to take a seat outside.

62.     Shortly thereafter, Jason Ocampo were called into the office to participate in the closed-door meeting.

63.     From Plaintiff's perspective, the white employees were coordinating their statements and devising a plan to agree on a narrative of events in order to affect Plaintiff's employment and falsely accuse Plaintiff of wrongful action.

64.     The Corporate Security Investigative Summary lists Mr. Matthews as the Primary Aggressor, and Mr. Blakney as the secondary aggressor.

65.     The Investigative Summary has conflicting information but does state that Mr. Matthew "escorted him [Plaintiff] out of his office by his [Plaintiff's] right arm, that according to Blakney, "Mr. Matthews was being restrained" and that, according to Mr. Pacheco, "Mr. Matthews had to be re-strained by four co-workers."

66.     There are references to Mr. Morgan being restrained and/or escorted away.

67.     There are references in the Summary, to a "loud commotion" and "yelling."

68.     Following this assault by Mr. Matthews, Plaintiff reported Mr. Matthews to the Police and a warrant was issued for Mr. Matthews arrest. The criminal matter is still pending with a January 2024 next status conference date.

69.     Following the assault by Mr. Matthews, Plaintiff was placed on an indefinite suspension as he made a "statement or gesture" that "could be interpreted as threatening your supervisor, Stacey Blakney."

70.     The indefinite suspension does not reference Mr. Matthews.

71.     The Summary references an allegation that Mr. Blakney told Plaintiff, "You're done"; to which Plaintiff replied, "you're done and I'll hit you too."

72.     Plaintiff denies that he threatened to hit Blakney.

73.     Plaintiff filed a Union Grievance challenging the suspension and/or asked the Union to assist him in filing an appeal.

74.     Some level of an investigation was conducted by MLGW which contains contradictory statement summaries, including statement summaries as referenced above.

75.     The appeal process proceeded to a step 3 meeting and/or an informal hearing and/or informal meeting with Ms. Leonard who was brought back to act as a neutral for purposes of the step 3 process and/or informal hearing/meeting.

76.     Ms. Leonard was the person to whom Plaintiff originally filed the EEO complaint – that EEO was subject to an informal mediation/resolution in April 2023 with Ms. Daniels. (After the resolution/mediation, Mr. Greg Deaton, manager (White, Male) reminded or announced a policy concerning conduct (relating to management and non-management); and in that announcement following the resolution, Mr. Deaton (in front of the locator department) stated to the effect that, "this policy is a result of people going downtown, and causing trouble and it is all BS"; Mr. Deaton's comments referred to Plaintiff's resolution and Plaintiff's EEO complaint; and when Mr. Deaton said this is BS, Plaintiff raised his hand and asked what he meant by BS and Mr. Deaton screamed at Plaintiff in front of everyone and told Plaintiff to "shut your mouth." )

77.     The Union representative told Plaintiff that Plaintiff was terminated on August 1, 2023. Plaintiff has not received any paperwork from MLGW relative to his termination, only paperwork of an indefinite suspension.

78.     Presumably, Plaintiff's termination is due in part to his COCEA.

79.     On March 1, 2019, Plaintiff received a Conditions of Continued Employment Agreement (COCEA) due to a verbal dispute with another employee wherein Plaintiff was alleged to have used "profanity" including the "n" word while arguing with another African American employee.

80.     Plaintiff and the other employee apologized to each other and remain friends to this day.

81.     MLGW issued discipline (suspension) to Plaintiff and other disciplinary steps (including EAP) in connection with the March 1, 2019 dispute and stated that "in the future, should [Plaintiff] display any behavior that is deemed to be in violation of this agreement, it will be thoroughly investigated by Corporate Security." The COEA further states that "If it is determined that sufficient evidence exists to support the allegations, Mr. Morgan's employment with MLGW will be terminated immediately.

82.     The COEA is null and void and should not have been issued by MLGW.

83.     The COEA is contrary to the MOU, including Article 15 vague, lacks compliance with the law and the MOU, attempts to transform Plaintiff's civil service and union rights to an at-will employee.

84.     Plaintiff was told that he was required to sign a COEA on 3-1-2019 by management to keep his job or that he would be immediately terminated, despite that he was not given appropriate progressive discipline and despite that the MOU between the Union and Management at MLGW prohibits MLGW from extracting a signature from Plaintiff on a COEA by threatening Plaintiff with dismissal.

85.     Plaintiff signed the COEA on 3-1-2019 but his signature does not state that he agreed.

86.     Under Plaintiff's signature line on the COEA it states, "My signature acknowledges and confirms receipt of this Document/s, not agreement with the content of the documents.

87.     Plaintiff signed the document, without agreement, and therefore in protest of a COEA.

88.     Plaintiff understood that the Union would be contesting his COEA and/or COEA's generally.

89.     In a recent matter, the Union took a COEA to arbitration through the Federal Mediation and Conciliation Service, and received a decision for another employee reiterating that a COEA was NOT valid when, *inter alia*, MLGW threated immediate termination to an employee unless they signed the COEA.   That arbitration award is dated Feb 28, 2023.

90.     Plaintiff COEA is for 5 years, which is excessive discipline.

91.     The COEA lacked fair negotiations.

92.     The COEA illegally thwarts the MOU by circumventing the MOU grievance and hearing process.

93.     The COEA illegally thwarts and/or attempts to circumvent the law by forcing Plaintiff to sign a COEA to which he does not agree and to illegally removal Plaintiff's civil service and other rights, including is property interest and federally protected rights in his job as set out by *Loudermill*.

94.     In connection with Plaintiff termination in this matter, MLGW seeks to enforce the March 3, 2019 invalid, illegal, unconstitutionally vague, arbitrary and capricious COEA.

95.     MLGW knows the COEA is invalid, due to the February 28, 2023 Arbitration decision but wrongfully and in violation of the law is enforcing the COEA against Plaintiff.

96.     During his tenure under Mr. Matthews and Mr. Blakney, Plaintiff was repeatedly harassed by these men based upon his race which he reported as part of his EEO and later at his EEOC filing.

97.     Mr. Matthews Facebook profile contains white supremist symbols, including that  it contains a symbol known as the Sonnerad or "sun wheel"[1] and is a symbol adopted by Nazis and used to represent the Aryan/Norse ideal and other white supremacy goals.[2]

98.     The white supremacy symbols appear on Mr. Matthews' social media as early as July 17, 2019.

99.     Plaintiff has suffered harm, pain and emotional distress including humiliation, embarrassment and reputation damages, and is seeking compensation for this harm, lost wages, backpay, interest, frontpay, non-economic and economic damages as allowed by law.

_____

[1] See *"9 White Supremacist Symbols That You Should Be Aware Of"* available at, https://www.indy100.com/news/symbols-white-supremacy-swastika-facism
[2] A number of groups and individuals have utilized the symbol in their propaganda.

**CAUSES OF ACTION**

## COUNT I

## <u>DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964</u>

1.      Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

2.      Plaintiff is a member of a protected class (African American) covered by Title VII, 42 U.S.C. sec. 2000e, et seq.

3.      The harassing and discriminatory and/or retaliatory (retaliatory harassment) actions, conduct and/or omissions were directed by Defendant MLGW through its employees because of Plaintiff's "race" (African American) in that the Defendant MLGW engaged in race discrimination and/or retaliation by treating Plaintiff less favorably; and/or in that Plaintiff was discriminated and/or retaliated against due to his race.

4.      Plaintiff complained about being discriminated against and/or harassed (subjected to a hostile work environment), including due to his race.

5.      Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly affected the terms and conditions of Plaintiff' employment and engaged in unlawful race discrimination, harassment and/or retaliation and/or retaliatory harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq.

6.      Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting unlawful race discrimination and harassment and/or retaliation and/or retaliatory harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq.

7.      As a direct and proximate result of Defendant MLGW's unlawful discriminatory, and/or harassing (including a hostile work environment) conduct and/or retaliatory and retaliatory

harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff' federally protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

8. Further, Defendant MLGW violated the law as described under the Sixth Circuit unpublished case of *Davis v. Metro*, Case No. 20-5526, (6th Cir. May 10, 2021), (en banc hearing request denied), the Court concluded that,

> *"Retaliation claims, brought under a hostile workplace theory, are statutorily distinct from hostile work environment claims. While both arise from Title VII, the 'provision[s] are not coterminous.' Burlington Northern, 548 U.S. at 67. Hostile workplace claims are derived from Title VII's anti-discrimination provision. See Morgan, 536 U.S. at 116; 42 U.S.C. § 2000e- 2(a)(1). As a result, charges brought under 'Title VII's anti-discrimination provision protects an individual only from employment-related discrimination,' or in other words, discrimination with respect to an employee's 'compensation, terms, conditions, or privileges of employment. Burlington Northern, 548 U.S. at 61. By contrast, Title VII's anti-retaliation provision does not have such limits. A charge under 42 U.S.C. § 2000e-3(a) 'extends beyond workplace-related or employment related retaliatory acts and harm.' Burlington Northern, 548 U.S. at 67. Therefore, in bringing a claim of retaliatory harassment, we assess solely whether the conduct of Plaintiff's employer 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' Id. at 68 (internal quotation marks omitted). Slip Op at 18.*

9. Here Defendant MLGW's actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination and/or harassment.

10. The actions and/or omissions by Defendant MLGW were materially adverse.

11. The standard for harassing conduct as retaliation under the EEOC Enforcement Guidance on Retaliation and Related Issues, B. Materially Adverse Action, 1. General Rule,1 states:

> *"The anti-retaliation provisions make it unlawful to take a materially adverse action against an individual because of protected activity. The Supreme Court held in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), that a "materially adverse action" subject to challenge under the anti-retaliation provisions encompasses a broader range of actions than an "adverse action" subject to challenge under the non-discrimination provisions. In light of the purpose of anti-retaliation*

*protection, it expansively covers any employer action that "might well deter a reasonable employee from complaining about discrimination. An action need not be materially adverse standing alone, as long as the employer's retaliatory conduct, considered as a whole, would deter protected activity. Although "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence," the standard can be satisfied even if the individual was not in fact deterred."*

12.     Further, under the same Guidelines, B. Materially Adverse Action, 3. Harassing Conduct as Retaliation, it states:

*"Sometimes retaliatory conduct is characterized as 'retaliatory harassment.' The threshold for establishing retaliatory harassment is different than for discriminatory hostile work environment. Retaliatory harassing conduct can be challenged under the Burlington Northern standard even if it is not severe or pervasive enough to alter the terms and conditions of employment. If the conduct would be sufficiently material to deter protected activity in the given context, even if it were insufficiently severe or pervasive to create a hostile work environment, there would be actionable retaliation."*

13.     Plaintiff engaged in a protected activity, including that he complained about being discriminated against due to his race, opposed unlawful practices of Defendant MLGW and made an EEOC charge, and filed internal EEO complaint(s), and protested unlawful practices by Defendant MLGW.

14.     Defendant MLGW was aware of Plaintiff' protected activities.

15.     Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly took adverse action and/or created a retaliatory hostile work environment due to Plaintiff engaging in protected activities (protesting and opposing unlawful practices) which affected the terms and conditions of Plaintiff' employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq.

16.     Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting retaliation (as Plaintiff engaged in a protected activities) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq.

17.     As a direct and proximate result of Defendant MLGW unlawful retaliatory conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff' federally and Constitutionally protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

**COUNT II**

**DISRIMINATION AND RETALIATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT**

18.     Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

19.     Plaintiff is a member of the protected class covered by the Tennessee Human Rights Act (THRA).

20.     Defendant MLGW, through its agents, representatives and employees, intentionally, willfully and knowingly discriminated against Plaintiff in the terms and conditions of his employment based upon race (African American) discrimination.

21.     The Plaintiff endured a hostile work environment and harassment.

22.     Plaintiff seeks injunctive relief to remedy the alleged wrongdoings on the basis that he has no adequate or complete remedy at law to redress the discriminatory practices of Defendant MLGWs.

23.     The acts and omissions of Defendant MLGW constitute a violation of Plaintiff's rights in violation of THRA, Tenn. Code Ann. 4-21-101, et seq, 4-21-301, et. seq., and 4-21-401 et seq. (with a civil action allowed pursuant to TCA 4-21-311, et seq.) as amended, and have caused Plaintiff substantial damages and injuries, including loss of income and benefits, humiliation, embarrassment and emotional distress.

24.     The harassing and discriminatory and/or retaliatory (retaliatory harassment) actions, conduct and/or omissions were directed by Defendant MLGW through its employees because of Plaintiff's "race" (African American) in that Defendant MLGW engaged in race discrimination and/or retaliation by treating Plaintiff less favorably; and/or in that Plaintiff was discriminated and/or retaliated against due to his "race."

25.     Plaintiff complained about being discriminated against and/or harassed (subjected to a hostile work environment), including due to his race.

26.     Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly affected the terms and conditions of Plaintiff's employment and engaged in unlawful race discrimination and harassment and/or retaliation and/or retaliatory harassment in violation of the THRA.

27.     Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting unlawful race discrimination and harassment and/or retaliation and/or retaliatory harassment in violation of the THRA.

28.     As a direct and proximate result of Defendant MLGW's unlawful discriminatory, and/or harassing (including a hostile work environment) conduct and/or retaliatory and retaliatory harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

29.     Defendant MLGW's actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination and/or harassment.

30.     The actions and/or omissions by Defendant MLGW were materially adverse.

31.     Plaintiff engaged in a protected activity, including that he complained about being discriminated against (made illegal under the THRA or other TN law) including he was discriminated against due to his race, opposed unlawful practices of Defendant MLGW and made an EEOC charge, and filed internal EEO complaints, and protested unlawful practices by the Defendant MLGW.

32.     Defendant MLGW was aware of Plaintiff's protected activities.

33.     Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly took adverse action and/or created a retaliatory hostile work environment due to Plaintiff engaging in protected activities (protesting and opposing unlawful practices) which affected the terms and conditions of Plaintiff's employment in violation of the THRA.

34.     Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting retaliation (as Plaintiff engaged in a protected activities) in violation of the THRA.

35.     As a direct and proximate result of Defendant MLGW's unlawful retaliatory conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's State protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

## COUNT III

### 42 USC 1981

36.     Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

37.     Plaintiff is a member of the protected class covered by the protections of 42 USC 1981.

38.     Defendant MLGW, through its agents, representatives and employees, intentionally, willfully and knowingly discriminated against Plaintiff in the terms and conditions of his employment based upon race (African American) discrimination.

39.     The Plaintiff endured a hostile work environment and harassment.

40.     Plaintiff seeks injunctive relief to remedy the alleged wrongdoings on the basis that he has no adequate or complete remedy at law to redress the discriminatory practices of Defendant MLGWs.

41.     The acts and omissions of Defendant MLGW constitute a violation of Plaintiff's rights in violation of 42 USC 1981, and have caused Plaintiff substantial damages and injuries, including loss of income and benefits, humiliation, embarrassment and emotional distress.

42.     The harassing and discriminatory and/or retaliatory (retaliatory harassment) actions, conduct and/or omissions were directed by Defendant MLGW through its employees because of Plaintiff's "race" (African American) in that Defendant MLGW engaged in race discrimination and/or retaliation by treating Plaintiff less favorably; and/or in that Plaintiff was discriminated and/or retaliated against due to his "race."

43.     Plaintiff complained about being discriminated against and/or harassed (subjected to a hostile work environment), including due to his race.

44.     Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly affected the terms and conditions of Plaintiff's employment and engaged in unlawful race discrimination and harassment and/or retaliation and/or retaliatory harassment in violation of the 42 USC 1981, including denying Plaintiff equal benefits to make and enforce contract (including the protected rights to making, modification and termination of contracts and the enjoyment of all benefits, privileges terms and conditions of the contractual relationship), and

denying Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

45.     Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting unlawful race discrimination and harassment and/or retaliation and/or retaliatory harassment in violation of the 42 USC 1981.

46.     As a direct and proximate result of Defendant MLGW's unlawful discriminatory, and/or harassing (including a hostile work environment) conduct and/or retaliatory and retaliatory harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

47.     Defendant MLGW's actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination and/or harassment.

48.     The actions and/or omissions by Defendant MLGW were materially adverse.

49.     Plaintiff engaged in a protected activity, including that he complained about being discriminated against (made illegal under 42 USC 1981) including he was discriminated against due to his race, opposed unlawful practices of Defendant MLGW and made an EEOC charge, and filed internal EEO complaints, and protested unlawful practices by the Defendant MLGW.

50.     Defendant MLGW was aware of Plaintiff's protected activities.

51.     Defendant MLGW through its agents, representatives and employees, intentionally willfully and knowingly took adverse action and/or created a retaliatory hostile work environment due to Plaintiff engaging in protected activities (protesting and opposing unlawful practices) which affected the terms and conditions of Plaintiff's employment in violation of the 42 USC 1981.

52.     Defendant MLGW through its agents, representatives and employees, engaged in actions and omissions constituting retaliation (as Plaintiff engaged in a protected activities) in violation of the 42 USC 1981.

53.     As a direct and proximate result of Defendant MLGW's unlawful retaliatory conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's State protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

**COUNT IV**

**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER THE TENNESSEE HEALTHY WORKPLACE ACT</u>**

54.     Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

55.     The Healthy Workplace Act, 2014 Tenn. Pub. Acts, ch. 997, codified at Tenn. Code Ann. §§ 50-1-501 through 50-1-504 ("the Act"), was enacted to help prevent "abusive conduct," "verbal abuse" and the "sabotage or undermining of an employee's work performance" in the workplace in state and local government in Tennessee. See Tenn. Att'y Gen. Op. 15-01 (Jan. 6, 2015).

56.     Memphis has a "Respectful Workplace Policy" which addresses respectful treatment of City of Memphis employees. The policy has been in place since 2012. It does not meet the requirements of the Healthy Workplace Act, as such no immunity attaches to Defendant.

57.     The definition of Workplace Violence in the "Respectful Workplace Policy" includes, but is not limited to, intimidations, bullying, stalking, threats, physical attack, domestic violence or property damage and includes acts of violence committed by City employees, clients, customers,

relatives, acquaintances or strangers against a fellow employee, member of management, customer, vendor, or visitor to the City's premise.

58.     Their definition of "Intimidation" is engaging in actions that include, but are not limited to, behavior intended to frighten, coerce or induce duress.

59.     Their definition of "Bullying" is "unwanted offensive and malicious behavior which undermines an individual or group through persistently negative attacks."  This definition is very limited. Bullying includes more than maliciously undermining a person. Bullying is also behavior described by the Act's sections A and B, above: acts and omissions, and verbal, nonverbal, and physical conduct of a humiliating nature. Nonverbal conduct would include contemptuous stares and sneers. They are humiliating and/or intimidating.

60.     In the present matter, Defendant MLGW, through its agents, representatives and employees, have violated every provision of the Healthy Workplace Act and their own "Respectful Workplace Policy."

61.     As a result of the actions of Defendant MLGW, through its agents, representatives and employees, Plaintiff has suffered emotional and psychological distress.

62.     The actions and/or omissions of Defendant by and through its agents and employees constitutes negligent infliction of emotional distress for which Defendant is liable.

## COUNT V

## VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

63.     Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

64.     The actions and omissions by Defendant through its agents, representatives and employees, under color of law affected the terms and conditions of Plaintiff's employment and

constitute unlawful race discrimination, harassment, and/or retaliation in violation of Memphis Tennessee Code of Ordinances.

65.     The effect of the actions, conduct and/or omissions deprived Plaintiff of his due process and equal protection of the laws, and adversely affected the terms and conditions of his employment.

66.     The acts and omissions by Defendant by having Plaintiff sign the COCEA violated Plaintiff due process rights as protected by the US Fourteenth Amendment.

67.     The acts and omission by Defendant through its agents, representatives, and employees, under color of law of constitute race discrimination and/or retaliation and interfere with Plaintiff's protected liberty interests under the Due Process Clause of the Fourteenth Amendment and as set out in *Loudermill*; and interfere with his right to the equal protection of the law as guaranteed by the Equal Protection Clause of the Fourteenth Amendment. All of these Constitutional claims are made actionable against Defendant by 42 U.S.C. Section 1983.

68.     As a direct and proximate result of Defendant's unlawful discriminatory, retaliatory and harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally and constitutionally protected rights, Plaintiff has suffered harm including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Court enter a judgment in his favor against the Defendant following a jury verdict in his favor and that the following relief be granted:

1.     Declaration that the Defendant violated Plaintiff's rights with regard to race discrimination (hostile work environment) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. and/or including retaliation/retaliatory harassment.

2.     Declaration that the Defendant did unlawfully terminate Plaintiff's employment and that he be returned to his former position with MLGW immediately with same status, seniority, benefits and pay.

3.     Injunctive relief ordering Defendant to cease all discriminatory and/or retaliatory conduct alleged herein and/or exercise such remedial measures to correct the adverse effects arising out of such conduct;

4.     Compensatory damages with prejudgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendant's unlawful actions in an amount not less than $500,000.00 or to be determined;

5.     Damages to Plaintiff for emotional distress, loss of enjoyment of life, embarrassment, and humiliation in an amount to be determined;

6.     Punitive damages to Plaintiff in an amount to be determined but not less than $300,000;

7.     Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; and

8.     Such further relief as is deemed appropriate.

A JURY TRIAL IS DEMANDED.

Respectfully submitted,

HOLLAND & ASSOCIATES, PC

By: _/s/Maureen T. Holland_____
    Maureen T. Holland, Esq. (#15202)
    Yvette H. Kirk, Esq. (#32174)
    HOLLAND & ASSOCIATES, PC

1429 Madison Avenue
Memphis, TN  38104
Telephone: (901) 278-8120
Fax: (901) 278-8125
maureen@hollandattorney.com
yvette@hollandattorney.com

*Attorneys for Plaintiff*

## OATH

I, Damien Morgan, declare under penalty of perjury that the foregoing facts in the Complaint for Damages and Injunctive Relief are true and correct to the best of my knowledge and belief.

Executed on the ___21st___ day of November 2023.

_____
Damien Morgan